UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
MOREFUN CO. LTD.,                                            :
                                                             :
                                       Plaintiff,            :
                                                             :      13 Civ. 9036 (LGS)
                        -against-                            :
                                                             :      OPINION AND ORDER
MARIO BADESCU SKIN CARE INC., et al.,                        :
                                                             :
                                       Defendant.            :
                                                             :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/06/14

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Morefun Co. Ltd. ("Morefun") brings this case against Defendant Mario Badescu Skin Care Inc. ("Badescu"), alleging that Badescu breached the terms of the parties' distribution agreement dated November 30, 2011 (the "Distributorship Agreement") and fraudulently induced Morefun into settling claims for that breach. The Defendant moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), citing an existing and enforceable settlement agreement between the parties. For the following reasons, the Court grants Defendant's Motion.

**BACKGROUND**

      The facts below are taken from the Amended Complaint, and the settlement agreement ("Settlement Agreement"), which is incorporated by reference. On or about November 30, 2011, Plaintiff entered into the Distributorship Agreement with Defendant, which appointed Plaintiff as the exclusive distributor of certain Badescu products in the Republic of Korea. Pursuant to the Distributorship Agreement, Plaintiff purchased seven batches of skin care products from Defendant, each with a unique identifying batch number. To distribute the product in the

Republic of Korea, Plaintiff entered into a contract with a local distributor and sold approximately 34,530 units of the product to customers between May 2012 and October 2012.

In June 2012, Plaintiff learned of customer inquiries about the possible inclusion of steroids in the product.  Plaintiff repeatedly asked Defendant about the customer's allegations, which Defendant denied.  In September 2012, the Korean Food and Drug Administration (the "KFDA") collected samples of the product from batch number 1206009372 ("Batch 372").  The KFDA found that Batch 372 contained Glucocorticoid, Hydrocortisone, and Triamcinolone acetonide.  As a result of these findings, on December 14, 2012, the KFDA initiated a recall order mandating the recall and destruction of Batch 372.  The recall of Batch 372 resulted in damages to Plaintiff in the approximate amount of $900,000, after Plaintiff was required to refund customers and compensate its local distributor.  Defendant represented to Plaintiff numerous times that the remaining six batches of the product that Plaintiff purchased had been tested, and were steroid free.  Plaintiff was unable to test or otherwise verify Defendant's representations that Batch 372 was the only contaminated batch, and that the other batches were steroid free.

On June 10, 2013, Plaintiff and Defendant entered into the Settlement Agreement, pursuant to which Defendant agreed to pay Plaintiff $492,000 in compensation for costs incurred by Morefun following the KFDA's recall of Batch 372.  The Recitals in the Settlement Agreement state:

A. [Morefun] purchased from [Badescu], and [Badescu] sold to [Morefun], certain cosmetic products, in particular the Mario Badescu Healing Cream (the "Product");
B. [Morefun] sold the Product to consumers in the Republic of Korea through a third party distributor; and
C. Such consumers have filed various complaints in respect of the Product, due to which [Morefun] has provided compensation to said third party distributor.

The parties entered into the Settlement Agreement to "reach a full and final settlement of the [transactions referenced in the Recitals] and all matters arising therefrom." In Paragraph 4 of the Settlement Agreement Plaintiff released "all legal or equitable claims both direct and indirect including but not limited to the loss of good will which it may have against [Badescu] arising from or in connection with [Morefun's] purchase or sale of the Product from [Badescu]."

In July 2013, following independent tests, the KFDA recalled the remaining six batches of the product Plaintiff had purchased from Defendant. Ultimately, Plaintiff's total damages as a result of the recalls of all seven batches were, at minimum, $1.7 million.

Plaintiff now brings claims against Defendant for: (1) breach of the Distributorship Agreement; (2) delivery of goods in nonconformance with the Distributorship Agreement in violation of the Uniform Commercial Code; (3) breach of implied warranties in the Distributorship Agreement; (4) fraudulent or negligent misrepresentation on the Settlement Agreement; (5) indemnification for personal injury claims; and (6) rescission of the Settlement Agreement.

**STANDARD OF REVIEW**

On a motion to dismiss, this Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While "'detailed factual allegations'" are not necessary, the pleading must be supported by more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at

555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (alteration in original) (quoting *Twombly*, 550 U.S. at 555), *cert. denied*, 133 S. Ct. 846 (2013). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

### I. Claims Under the Distributorship Agreement are Barred by the Settlement Agreement

The First Cause of Action alleges that Defendant breached the original Distributorship Agreement by providing Plaintiff with products that contained raw steroid material. The Second Cause of Action alleges that Defendant did not provide goods that conformed to the Distributorship Agreement, in violation of the U.C.C. The Third Cause of Action alleges that the Defendant breached the implied warranties in the Distributorship Agreement. The Fourth Cause of Action alleges that Plaintiff was fraudulently induced by Defendant to enter into the Settlement Agreement.

Defendant moves to dismiss, arguing that the Settlement Agreement bars Plaintiff's claims. Because the terms of the Settlement Agreement are unambiguous, and the Settlement Agreement contains a valid release of all claims arising out of the Product, the Settlement Agreement bars the above-mentioned four claims in the Complaint.

### A.  The Settlement Agreement is Unambiguous

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999).  "[W]ritten agreements are construed in accordance with the parties' intent." *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013).  "A contract is unambiguous when the contractual language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." *Keiler v. Harlequin Enterprises Ltd.*, No. 13-CV-1753, 2014 WL 1704474 at *4, --F.3d-- (2d Cir. May 1, 2014).  "[W]hen parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms." *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 920 N.E.2d 359, 362 (N.Y. 2009) (quoting *Vermont Teddy Bear Co. v. 538 Madison Realty Co.,* 1 N.Y.3d 470, 475 (2004)).  "Whether an agreement is ambiguous is a question of law for the courts . . . . Ambiguity is determined by looking within the four corners of the document, not to outside sources." *Id.* (internal quotation omitted).

The Settlement Agreement explicitly defines "Product" in the Recitals as the Mario Badescu Healing Cream.  Paragraphs B and C of the Recitals do not limit the definition of Product to Batch 372, but only state that the Product had been sold in Korea and complaints were made about the Product.  The Settlement Agreement releases Morefun from all claims arising from or in connection with Morefun's purchase or sale of the Product.  There is no ambiguity in these terms as there is "no reasonable basis for a difference of opinion." *Keiler*, 2014 WL 1704474 at *4.

Plaintiff maintains that the term "Product" in the Settlement Agreement was intended to refer only to Batch 372, therefore releasing claims arising out of Batch 372 and not any of the other batches.  Plaintiff argues that Paragraphs B and C of the Recitals in the Settlement

5

Agreement limit the definition of "Product" to just Batch 372, because at the time the contract was drafted, customer complaints regarding the Product could have been made only about Batch 372. This argument fails.

First, Plaintiff's interpretation of the Settlement Agreement requires parol evidence to read the terms of the Settlement Agreement, because it requires evidence that only Batch 372 had been bought and sold prior to signing the agreement. "[E]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *R/S Associates v. New York Job Dev. Auth.*, 771 N.E.2d 240, 241 (N. Y. 2002) (internal quotation omitted). On the face of the agreement, the Product is the "Mario Badescu Healing Cream." Reading Paragraphs B and C of the Recitals as limiting language requires extrinsic evidence that complaints had been filed only about Batch 372.

Second, Plaintiff is a sophisticated party, and could have included language to narrow the broad definition of "Product" to include only Batch 372. *See Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 880 (N.Y. 2004) (finding no intent to add terms where sophisticated parties could have added a term but failed to do so); *Innophos, Inc. v. Rhodia, S.A.*, 832 N.Y.S.2d 197, 199 (2007) *aff'd*, 882 N.E.2d 389 (N.Y. 2008) ("Had the parties wished to limit [the] expansive verbiage . . . they could have easily provided for such specific, enumerated exceptions to their agreement's chosen sweeping words"); *see also Banco Espirito Santo, S.A. v. Concessionaria Do Rodoanel Oeste S.A.*, 951 N.Y.S.2d 19, 26 (N.Y. App. Div. 2012) (finding that "commercially sophisticated" plaintiffs could have easily "expressed [their] intent in the language" of the agreement). The Settlement Agreement makes no mention of any specific batch of product. If Plaintiff had intended that narrow scope, it could have easily ensured that meaning was clear from the language of the Settlement Agreement. Therefore, Plaintiff's argument that the Settlement Agreement is limited to Batch 372 is without merit.

### B. Plaintiff Cannot Bring Claim for Fraudulent Inducement

Plaintiff's claim for fraudulent inducement is also barred by the Settlement Agreement. Plaintiff argues that to the extent it released claims beyond those based on Batch 372 in the Settlement Agreement, it was fraudulently induced to do so by Defendant's misrepresentations regarding the presence of steroids in the other batches. Where a settlement agreement releases all claims, a party may bring a claim for fraudulent inducement only if it can identify a fraud separate from the subject of the release. Here, the fraud alleged in the Complaint is not separate from the release, and accordingly Plaintiff cannot bring a claim for fraudulent inducement.

"Under New York law . . . a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Interpharm v. Wells Fargo Bank, Nat. Ass'n.*, 655 F.3d 136, 142 (2d. Cir. 2011). "If the language of a release is clear and unambiguous, the signing of a release is a jural act binding on the parties." *Centro Empresarial Cempresa, S.A. v. América Móvil, S.A.B. De C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011) (internal quotation omitted). While the defendant has the initial burden of showing that it has been released from claims, "a signed release shifts the burden of going forward to the plaintiff to show that there has been fraud, duress, or some other fact which will be sufficient to void the release." *Id.* (internal quotation omitted); *see also Interpharm*, 655 F.3d at 142.

"Notably, a release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is fairly and knowingly made." *Centro Empresarial*, 952 N.E.2d at 1000 (citation omitted). Where a party releases a fraud claim, it "may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release." *Id.* Full disclosure is not required for a release to be effective, even with respect to fraud claims. *See Bellefonte Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 527 (2d Cir. 1985). While a release may be invalidated on traditional grounds, including duress, illegality, fraud, or

7

mutual mistake, "[a] release should never be converted into a starting point for litigation except under circumstances and under rules which would render any other result a grave injustice." *Centro Empresarial*, 952 N.E.2d at 1000.

   The release in the Settlement Agreement is a clear and unambiguous release of "all claims" arising out of the Product.  The Amended Complaint does not allege a fraud separate from the subject matter of the Settlement Agreement.  The Settlement Agreement's subject matter was the damage Plaintiff sustained when it sold the Product in Korea, which Defendant had misrepresented was steroid free.  The Amended Complaint alleges no fraud other than Defendant's misrepresentations that the Product was steroid free.

   If Plaintiff was concerned about the representations Defendant made prior to the signing of the Settlement Agreement, it could have included a specific warranty in the Settlement Agreement.  Plaintiff is a sophisticated party that knew, as alleged in the Amended Complaint, of Defendant's duplicity as to Batch 372, and yet relied on Defendant's representations as to the remaining six batches.  Even if Plaintiff had not released its claims, the Amended Complaint fails to state a claim for fraudulent inducement as Plaintiff has not alleged justifiable reliance. *See Arfa v. Zamir*, 952 N.E.2d 1003, 1004 (N.Y. 2011) ("By their own admission, plaintiffs, who are sophisticated parties, had ample indication prior to [the release date] that defendant was not trustworthy, yet they elected to release him from the very claims they now bring without investigating the extent of his alleged misconduct."); *Centro Empresarial*, 952 N.E.2d at 1002 ("according to the facts alleged in the complaint, plaintiffs knew that defendants had not supplied them with the financial information necessary to properly value the TWE units . . .  Yet they chose to cash out their interests and release defendants from fraud claims without demanding either access to the information or assurances as to its accuracy in the form of representations and warranties.").

Plaintiff argues that *Centro Empresarial* is inapplicable to the present case, because the release in that case was in reference to claims arising out of the agreement itself. *Centro Empresarial*, 952 N.E.2d at 998. While the release in that case was agreement specific, the decision makes clear that "a party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the *subject* of the release." *Id.* at 1000 (emphasis added). The subject of the release in the Settlement Agreement was Defendant's misrepresentations regarding the presence of steroids in the Mario Badescu Healing Cream. Plaintiff further argues that under New York law, where a plaintiff alleges fraudulent inducement in the procurement of a release, a motion to dismiss should not be granted. *See Gonzalez v. 40 W. Burnside Ave. LLC*, 968 N.Y.S.2d 50 (N.Y. App. Div. 2013); *Bloss v. Va'ad Harabonim of Riverdale*, 610 N.Y.S.2d 197 (N.Y. App Div. 1994). These cases are inapposite, as they involved fraud collateral to the contract, and not a fraud that was the subject matter of the contract.

Plaintiff released its claims arising out of its purchase of the Healing Cream and fails to state a claim for fraud, and accordingly, its claims for negligent or fraudulent inducement also fail.

**III.  Rescission and Indemnification**

The Sixth Cause of Action for rescission is also barred by the Settlement Agreement. Where a settlement agreement releases claims for fraud, a plaintiff cannot seek to rescind the settlement agreement based on claims for fraud, unless those claims are collateral to the contract. *See Bellefonte Re Ins. Co.*, 757 F.2d at 527; *Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 190 (S.D.N.Y. 2008). Plaintiff further abandoned its Fifth Cause of Action for indemnification as unripe in its Memorandum of Law in Opposition.

**CONCLUSION**

Because the language of the Settlement Agreement is unambiguous, and contains a valid release of all claims, Defendant's Motion to Dismiss is GRANTED.

The Clerk of the Court is directed to close the motions at docket numbers 2 and 15 and to terminate the case.

SO ORDERED.

Dated: June 6, 2014
       New York, New York

                                          **LORNA G. SCHOFIELD**
                                        **UNITED STATES DISTRICT JUDGE**